# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | : | DOCKET NO. 2:18-cr-00136 |
| --- | --- | --- |
| VS. | : | JUDGE JAY C ZAINEY |
| ROBERT A. WILSON | : | MAGISTRATE JUDGE KAY |

## ORDER AND REASONS

Before the court is a "MOTION TO DISMISS THE INDICTMENT" (Rec. Doc. #21)and "MOTION TO DISMISS THE INDICTMENT BASED UPON PRE-INDICTMENT DELAY" (Rec. Doc. #22) wherein Defendant, Robert A. Wilson, moves to dismiss the indictment filed against him pursuant to Federal Rule of Criminal Procedure Rule 48(b)(1) and (2). For the reasons that follow, both motions will be denied.

## THE INDICTMENT

On June 14, 2018, a grand jury returned an indictment charging defendant, Robert A. Wilson, with twenty-one counts of Receiving Illegal Gratuity by a Public Official in violation of 18 U.S.C. § 201(c)(1)(B). The indictment charges that Wilson received twenty-one separate payments from an Apeck Construction, Inc. ("Apeck") Co-owner, in exchange for helping to ensure that Apeck was the source, supplier, or provider of construction material for contracts, supply and delivery contracts at Fort Polk.[1]

---

[1] Rec. Doc. #1, p. 2-3.

**FACTUAL STATEMENT**

The Joint Readiness Training Center and Fort Polk (collectively referred to as "Fort Polk JRTC") is a military installation near Leesville, Louisiana. Fort Polk's mission is to prepare, deploy, sustain, and redeploy trained and ready forces of the U.S. Army, including active duty, National Guard, and the Army Reserve. Fort Polk provides housing, training, maintenance, and community facilities and services, as well as supply, transportation, and logistical planning, in support of the U.S. Army mission.

Various directorates and installation support offices issue task orders and administer contracts on behalf of the United States for Fort Polk. The Directorate of Public Works is responsible for maintaining the facilities and supporting the infrastructure at Fort Polk. Defendant, Robert A. Wilson, was employed by the Directorate of Public Works at Fort Polk; Wilson's employment made him a public official as defined in 18 U.S.C. § 201(a)(1) by virtue of his position as an Engineer Tech.[2] Wilson served as the Point of Contact for contracts Apeck received at Fort Polk from approximately 2004 through 2010.

From approximately March through September, 2010, Agent Darrin K. Jones with the office of the Inspector General, Department of Defense, Defense Criminal Investigative Service, investigated and questioned numerous individuals relating to Apeck. The investigation continued through the year 2011. Wilson was questioned within his office within the Department of Public Works at Fort Polk on July 20, 2010.

On April 21, 2011, Wilson received a target letter from Stephen Booker, Trial Attorney, associated with the U.S. Department of Justice Antitrust Division. On August 8, 2017, Wilson

---

[2] Rec. Doc. #1, p. 1-2.

received a target letter by AUSA, Kelly Uebinger, on behalf of the Acting U.S. Attorney. On June 14, 2018, a grand jury returned an indictment charging Wilson with twenty-one (21) counts of Receiving Illegal Gratuity by a Public Official in violation of 18 U.S.C. § 201(c)(1)(B). Count 1 asserts that the first payment took place on July 20, 2007 and Count 21 asserts that the last payment took place on May 28, 2010. The first alleged offense occurred more than eleven (11) years from the date of the indictment, and the last alleged offense occurred more than eight (8) years from the date of the indictment.

## LAW AND ANALYSIS

Wilson moves to dismiss the twenty-one count indictment. Wilson maintains that the indictment was filed after the expiration of the statute of limitations. Wilson also maintains that his right to a fair trial was prejudiced due to prosecutorial delay in bringing the accusations.

***Should the indictment be dismissed based on prescription?***

In response to the September 11, 2001 attack on the United States, Congress passed the Authorization for Use of Military Force ("AUMF")[3] which authorized the President to use the United States Armed Forces against those responsible for the attacks after which the United States conducted and continues to conduct combat activities against al-Qaeda, ISIS, and other Islamic militant groups under the auspices of the AUMF.

18 U.S.C. § 3282 is the federal statute of limitations regarding offenses not capital and provides as follows:

> [e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been

---

[3] Pub. L. 107-40, codified at 115 Stat. 224.

3

committed.

The United States opposes dismissal, based on the unequivocal exception clause: "[e]xcept as otherwise expressly provided by law[.]"[4] The United States relies on the Wartime Suspension of Limitations Act ("WSLA") to support its position that all of the allegations set forth in the indictment are timely. 18 U.S.C. § 3287 provides as follows:

> [t]he running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancellation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the authorized use of the Armed Forces, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress.[5]

The Supreme Court has held that the WSLA applies only to crimes committed after the triggering of the suspension clause but before the termination of hostilities.[6] Since the September 11, 2001 attacks, every Court of Appeals has held that the 2001 AUMF was sufficient to trigger the WSLA's suspension clause, and none have held that the terms of the statute's termination clause

---

[4] Emphasis added.

[5] Prior to October 4, 2008, the WSLA was applicable only "when the United States is at war" and suspended the relevant statutes for three (3) years after the termination of hostilities "as proclaimed by the President or by a concurrent resolution of Congress."

[6] United States v. Smith, 342 U.S. 225, 228 (1952).

4

have been met. The government relies on United States v. Pfluger,[7] wherein the defendant's 2010 indictment alleged that defendant had accepted gratuities from potential contractors in violation of 18 U.S.C. § 201(b)(1), in exchange for helping to secure privileges and competitive advantages. The wrongful conduct occurred from 2003 through 2004. The court rejected defendant's claim that the indictment was untimely and held that the 2001 AUMF had triggered the WSLA, and that because "neither Congress nor the president met the formal requirements for terminating the WSLA's suspension of limitations as of May 2004, (nor yet to this date), . . . the Government's indictment in this case is valid."[8] Four other circuits have held that the WSLA's suspension of the relevant statute of limitations has been triggered and not been terminated.[9]

Wilson argues that the WSLA is not applicable because the offense charged (bribery of an official) does not contain fraud as an essential element. In other words, the allegations that Wilson received twenty-one payments in exchange for helping to ensure that Apeck was the source, supplier or provider of construction material for contracts at Fort Polk is not an act of fraud. Wilson further argues that his activities have no rational nexus with the WSLA.

---

[7] 685 F.3d 481 (5th Cir. 2012).

[8] Id. at 483 n.3, 485.

[9] See United States v. Melendez-Gonzalez, 892 F.3d 9, 15 (1st Cir. 2018)(citing the WSLA to uphold a 2015 indictment for conduct that occurred between March 2006 and June 2008); United States Frediani, 790 F.3d 1196, 1200 (11th Cir. 2015)(holding a 2013 indictment for conduct alleged to have occurred in 2006); United States ex rel. Carter v. Halliburton Co., 710 F.3d 171, 179 (4th Cir. 2013)(holding that the WSLA had suspended an otherwise applicable statute of limitations for a 2011 civil claim based on alleged conduct in 2005) aff'd in part, rev'd in part on other grounds sub nom. Kellogg Brouwn & Root Serv.'s, Inc. v. U.S. ex rel Carter, 135 S.Ct. 1970 (2015); United States v. Loman, 597 Fed. App'x 518, 521-22 (10th Cir. 2015)(upholding a 2013 indictment for conduct alleged to have occurred between 2002 and 2006).

5

Wilson cites <u>Bridges v. United States,</u>[10] wherein the Supreme Court held that the WSLA is not applicable in circumstances that involve making a false statement, or conspiring to do so, or of aiding someone to obtain a Certificate of Naturalization, knowing it to be procured by fraud, none of which involved defrauding the United States in any pecuniary manner or in a manner concerning property. The Court finds that <u>Bridges</u> is distinguishable from the case *sub judice* as this case does involve a pecuniary interest.

The government notes that the underlying crimes committed by Apeck against the United States (Criminal Action 2:17-cr-00166), wherein Apeck plead guilty to Conspiracy to Defraud the United States and Conspiracy to Bribe a Public Official, concern the same payments charged in the instant indictment.[11] The Court has reviewed that case and notes that the allegations for which Apeck plead guilty involved fraudulent conduct including submitting false and fictitious or rigged bids knowing that the bids were not legitimate, and knowing that the work for which the bids were being submitted, would not be performed.[12] Wilson received payments totaling approximately $25,000 in exchange for helping to ensure that Apeck was awarded contracts based on Apeck's fraudulent bids. Thus, the Court finds that the element of fraud is satisfied.

The Court further finds that there is a rational nexus between Wilson's conduct and war-time activities at Fort Polk. As stated by the government, Fort Polk is a military installation of the United States Army. The Fort Polk JRTC prepares, deploys, sustains and redeploys trained and ready forces of the U.S. Army, including active duty, National Guard and the Army Reserve.

---

[10] 73 S.Ct. 1055 (1953).

[11] See Foot note 1, p. 3 of the government's opposition. Rec. #25-1.

[12] See Count 1 of the Factual Basis for the Offenses Charged, p. 6, ¶ 3. Rec. 10-3 in Criminal action 2:17-00166-1.

Finally, because the Court finds the present indictment is timely. The WSLA applies to the crimes committed after the triggering of the suspension clause by the 2001 AUMF, and neither Congress nor the President has met the formal requirements for terminating the WSLA's suspension of limitations.

*Was the government's delay prejudicial and/or in bad faith?*

Wilson maintains that the government's conscious decision to file this indictment over eight years from the last charged act is prejudicial to Defendant and in violation of the Due Process clause of the Fifth Amendment. Wilson argues that the initial investigation of Apeck began in March of 2010 and continued through 2011. Despite this initial investigation, the grand jury indictment was returned on June 14, 2018. As previously noted, Count 1 took place in July 2007 and Count 21 took place on May 28, 2010.

To support his position of prejudice, Wilson relies on the death of Javance Jones on February 5, 2018. Jones was an environmental scientist employed by the Department of Public Works at Fort Polk and was involved on all construction projects, determining their environmental impact. Wilson argues that if Jones were still alive, he could provide testimony favorable to Wilson. Wilson suggests that the government's delay in bringing the indictment was for a tactical advantage and/or in bad faith. What is glaringly deficient in Wilson's argument is any evidence that Jones may have testified that would prove Wilson's innocence. Wilson's conclusory statement that Jones' testimony would have been favorable or that Jones was not aware of Wilson's wrongful conduct is not sufficient to establish prejudice, or bad faith on the part of the government.

Furthermore, the government has convinced the Court that its delay in charging Wilson was not to gain a tactical advantage, but was caused by factors outside its control. The government

7

submits that after the case was initially opened in 2011, the Dallas Antitrust Office was closed and the case transferred to the Chicago Office. The case had been initially assigned to trial attorney, Stephen Booker, who continued to work on the case in Chicago but was diagnosed with cancer which was terminal.[13] In addition, the lead agent assigned to the investigation was deployed from July of 2013 through March of 2014. After the lead agent returned from deployment, in 2016, the U.S. Attorney's office for the Western District of Louisiana requested that it take the lead on the case and pursue the matter. The court finds that Wilson has failed to establish that the government acted in bad faith, nor has he shown how he has been prejudiced by the delay in bringing the indictment.

**ORDER**

Based on the foregoing,

**IT IS ORDERED** that the "MOTION TO DISMISS THE INDICTMENT" (Rec. Doc. #21) is hereby **DENIED.**

**IT IF FURTHER ORDERED** that the "MOTION TO DISMISS THE INDICTMENT BASED UPON PRE-INDICTMENT DELAY" (Rec. Doc. #22) is hereby **DENIED.**

**THUS DONE AND SIGNED** in New Orleans, Louisiana on this 22nd day of October 2018.

_____
**JAY C. ZAINEY**
**UNITED STATES DISTRICT JUDGE**

---

[13] Mr. Booker passed away in 2016 as evidenced by his Obituary. Rec. #25-2.